Joel **BLAZ** and Frances Lauer, Plaintiffs,

v.

**GALEN HOSPITAL ILLINOIS, INC. d/b/a Michael Reese Hospital and Medical Center, and Arthur B. Schneider, M.D., Defendants.**

No. 96 C 0091.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 12, 1996.

E. Cooper Brown, Takoma Park, MD, Marvin A. Brustin, Marvin A. Brustin, Ltd., Chicago, IL, for Plaintiffs.

Jason A. Parson, Lord, Bissell & Brook, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Defendant, Michael Reese Hospital and Medical Center ("Michael Reese"), used X-ray therapy to treat approximately 5,000 patients for certain benign conditions of the head and neck during a thirty year period from 1930 to early 1960. Plaintiff, Joel Blaz, received such treatment at Michael Reese for infected tonsils and adenoids during a three week period in late 1947 and early 1948 while Mr. Blaz was a young child. Mr. Blaz now has brought suit on behalf of himself and a class comprised of the other 5,000 individuals given such treatment at Michael Reese ("Class I"). He has alleged claims for the following: (1) medical malpractice; (2) absence of informed consent; (3) negligence; (4) failure to warn; (5) fraud; and (6) loss of consortium. Mr. Blaz, for himself and on behalf of the class, seeks compensatory damages as well as equitable relief in the form of a Court-supervised medical monitoring program for the purpose of treatment and information gathering and disbursement. In addition, plaintiff, Frances Lauer, seeks to represent a separate class ("Class II") of

spouses and children of members of Class I for damages caused to them as a consequence of any injury to the members of Class I. Both Mr. Blaz and Ms. Lauer have moved for class certification. For the reasons set out below, the motion is denied.

### Rule 23(a) Requirements for Class Certification

■ A plaintiff seeking class certification must meet the requirements set out in Rule 23(a) of the Federal Rules of Civil Procedure. In particular, " 'he must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation.' All of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class." *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993) (citations omitted). In addition, the class also must fit into one of the categories in Rule 23(b). *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992). Moreover, the party seeking class certification bears the burden of demonstrating that all of the requirements of Rule 23 have been met. *Retired Chicago Police,* 7 F.3d at 596.

■ The first requirement, numerosity, is satisfied if the class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Approximately 5,000 individuals would be in the class, and these individuals, in the ensuing years since their treatment, have scattered across the country causing problems in locating them for purposes of gathering information about their current medical condition. *See* Affidavit of Dr. Arthur Schneider ¶¶ 1, 8, 9, 10. Given this number of class members and their geographical disbursement, I find that joinder is impracticable, and the numerosity requirement is satisfied.

■ The second prerequisite, commonality, requires that "there are questions of law or fact common to the class." Fed. R.Civ.P. 23(a)(2). Commonality, however, does not require that the class have all the same issues in common. Rather, "a common nucleus of operative fact is usually enough to satisfy the commonality requirement," and

"some factual variation among the class grievances will not defeat a class action." *Rosario, supra,* 963 F.2d at 1017–18. In fact, even a single issue which is common to the class will meet the requirement. *Edmondson v. Simon,* 86 F.R.D. 375, 380 (N.D.Ill.1980). In the present case, the single issue common to the class members is the fact that they were all exposed to radiation treatment at Michael Reese. This common course of conduct by Michael Reese, in turn, gives rise to several common legal claims for the entire class, such as the liability of Michael Reese for medical malpractice or simple negligence in connection with these treatments. Therefore, commonality exists.

 Unlike the prior two requirements, the remaining two requirements of Rule 23(a), typicality and adequacy of representation, focus on the similarities between the named plaintiffs' claims and those of the class as a whole. Rule 23 requires that the plaintiffs' claims be typical of the claims of the class. Fed.R.Civ.P. 23(a)(3). The Seventh Circuit has elaborated on the meaning of typicality, directing this Court "to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). Factual differences between the named plaintiffs' claims and those of the class are permissible as long as the named plaintiffs' claims arise " 'from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.' " *Id.* (citations omitted). In making this determination, I am mindful of the restriction placed on this inquiry in that I may not delve into the merits of the plaintiffs' case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). Nevertheless, I may and, in fact, need to look beyond the pleadings because:

> "[e]valuation of many of the questions entering into determination of class action questions is intimately involved with the

merits of the claims. The typicality of the representative's claims or defenses, the adequacy of the representative, and the presence of common questions of law or fact are obvious examples. The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits."

*Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 12, 98 S.Ct. 2454, 2458 n. 12, 57 L.Ed.2d 351 (1978) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3911, at 485 n. 45 (1976)).

Several courts previously have addressed similar situations where the plaintiffs have moved for class certification in mass tort cases involving exposure to harmful substances. Coping with the huge amount of litigation generated by Agent Orange, the Second Circuit criticized the use of the class device where the critical issues in the case turned on individual, not class, factors.[1] The Court stated:

> [t]he relevant question, therefore, is not whether Agent Orange has the capacity to cause harm, the generic causation issue, but whether it *did* cause harm and to whom. That determination is highly individualistic, and depends upon the characteristics of individual plaintiffs (*e.g.* state of health, lifestyle) and the nature of their exposure to Agent Orange. Although generic causation and individual circumstances concerning each plaintiff and his or her exposure to Agent Orange thus appear to be inextricably intertwined, the class action would have allowed generic causation to be determined without regard to those characteristics and the individual's exposure.

*In re Agent Orange,* 818 F.2d at 165.

Following a similar approach, another court in this Circuit held that the number of individual issues presented by a toxic tort case precluded a finding of typicality. *Hurd v. Monsanto Co.,* 164 F.R.D. 234, 239

---

1. Although the Second Circuit upheld class certification, they did so only for the narrow legal issue of a "military contractor defense." *In re Agent Orange Prod. Liability Litigation,* 818 F.2d 145, 167 (2nd Cir.1987). The Court noted that had such a case arisen in a civilian context, and no such defense was available, class certification "would have been in error." *Id.* at 166.

(S.D.Ind.1995). In a case involving exposure to PCBs, the court explained that:

> no single happening or accident occurred ... causing *identical* harms to each putative class member. Rather, each plaintiff was exposed to different levels of PCBs for different amounts of time in different areas of the plant. Each putative class member's susceptibility to injury from PCBs will vary. Thus, no single proximate cause inquiry applies equally to each putative class member; no one set of operative facts establishes liability.

*Id.* (emphasis added). Furthermore, where dose reconstruction is at issue[2], "individual measurements can be quite relevant evidence in determining the extent of an individual's level of exposure and that such measurements might vary from individual to individual." *Boughton v. Cotter Corp.,* 65 F.3d 823, 828 (10th Cir.1995) (holding that district court did not abuse its discretion by denying class certification for plaintiffs claiming harm from uranium mill emissions). Hence, this sampling of cases reveals that the variations among individuals with respect to exposure and effects can vitiate a finding of typicality.

In the instant case, Mr. Blaz finds himself in a similar situation. The radiation treatments that occurred took place over a period of approximately thirty years. *See* Plaintiff's Memorandum in Support of Class Certification at 3; Defendant's Memorandum in Opposition at 1. Although 5,000 children were exposed to X-rays due to this therapy, Mr. Blaz has alleged that he received approximately 750 rads of radiation over a three week period. Amended Complaint ¶¶ 26–29. Yet he has alleged that the class members received anywhere from 410 to 910 rads of radiation exposure, and he has made no allegations concerning the length of time for this exposure. The range of exposure, therefore, could differ by as much as 500 rads among any two given members of the class, and as much as 340 rads of difference might exist between Mr. Blaz' exposure and that of a given class member. Moreover, the time period of treatment might range from one day to one year. Consequently, I cannot conclude whether any of the proposed class members received the same or similar dosages over a comparable time period as that of Mr. Blaz.

 In addition, Mr. Blaz argues that general causation is an appropriate issue for class certification in this case. Notwithstanding the cautions from the Second Circuit against certifying a class on such grounds, *see In re Agent Orange,* 818 F.2d at 165, Mr. Blaz' argument is misplaced. The defendants have admitted that the treatments administered at Michael Reese during that time period do in fact place those treated patients at an increased risk for cancers of the thyroid, salivary glands and other organs. *See* Schneider Aff. ¶¶ 6, 11, Ex. 3. In essence, the defendants have conceded the general causation issue by admitting that a correlation exists between these cancers and the radiation treatment. Hence, the remaining issue becomes individual causation which, as noted above, is not an appropriate issue for the class action device. Even where a court has accepted the use of the class device for general causation, it has insisted that individual plaintiffs proceed separately when proving what, if any, harm occurred to them based on this establishment of general causation. *See Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1200 (6th Cir.1988) (holding that even though "many common issues of fact and law will be capable of resolution on a group basis, individual particularized damages still must be proved on an individual basis"). Therefore, I find that Mr. Blaz' claims are not and cannot be typical of those of the class due to the potentially wide variations in individual treatments, circumstances and effects. Hence, his claims for medical malpractice and negligence may not be pursued on behalf of the proposed class.

 For similar reasons, Mr. Blaz' claims for absence of informed consent, failure to warn and fraud also may not be brought on behalf of the class. Mr. Blaz, who bears the burden of proof, cannot know whether the class members gave informed consent or re-

---

**2.** The plaintiffs have alleged that "dose reconstruction" would be the primary method of demonstrating the amount of radiation received by the proposed class members. *See* Plaintiff's Memorandum in Support of Class Certification at 36.

ceived full information and warnings regarding the treatment. In fact, Mr. Blaz cannot show that the information (or lack thereof) given to him was typical of that given to other members of the class. In this circumstance, where the Court does not know if the communications made to all members of the proposed class were identical or uniform, typicality is lacking. *See Retired Chicago Police,* 7 F.3d at 597. Thus, Mr. Blaz has failed to demonstrate that his claims "have the same essential characteristics as the claims of the class at large." *De La Fuente,* 713 F.2d at 232.

■ Finally, Mr. Blaz' claim for loss of consortium and Ms. Lauer's claims for fraud and loss of consortium also cannot proceed as class actions. Certainly, if the injuries alleged by Mr. Blaz are not typical of those of the class, a claim such as loss of consortium, which is based on those injuries, cannot be typical of the class. Moreover, Mr. Blaz and Ms. Lauer's memoranda in support of class certification do not present any arguments in favor of certifying Class II on any issues,[3] and I will not invent any for them. Consequently, they have not carried their burden of proof for class certification. Because typicality is lacking, I need not address any of the other factors relevant to the class certification issue for either medical monitoring or personal injuries.

■ The Court's conclusions are bolstered by two important points. First, and certainly of some significance, is the plaintiffs' own admission that certification of a personal injury class "is admittedly more problematic." Plaintiff's Reply Memorandum at 3. Second, this Court has broad discretion in deciding the appropriateness of class certification. *Retired Chicago Police,* 7 F.3d at 596. Given the above plaintiffs' admission combined with the problems of typicality, the Court has exercised appropriate discretion to deny class certification.

---

**3.** Moreover, I am hard pressed to see how Ms. Lauer or any member of proposed Class II could maintain an action for fraud based on information that was provided to their spouse or parent for their own medical treatment. The patients, and not their spouses or children, are the ones who would have relied detrimentally on any fraudulent information.