Denise MARKHAM and Marion Morgan, on behalf of themselves, and all others similarly situated, Plaintiffs,

v.

Francis E. WHITE, Melvin O. Schabilion, Michael Flanagan, Saul "Buddy" Weinstein, Norbert Kuksta, and Other Unknown Defendants, in their individual capacities, Defendants.

No. 95 C 2065.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 28, 1997.

Jeffrey Irvine Cummings, Miner Barnhill & Galland, Chicago, IL, Sarah E. Siskind, Miner, Barnhill & Galland, P.C., Madison, WI, Amy F. Scarr, Madison, WI, for Denise Markham, Marion Morgan, Mary Lou Ricksecker.

David Philip Schippers, James M. Bailey, Schippers, Gilbert & Bailey, Chrtd., Chicago, IL, Vincent M. Garvey, Carlotta P. Wells, Federal Programs Branch Civil Division—U.S. Dept. of Justice, Washington, DC, William H. Theis, Chicago, IL, for Francis E. White, Michael Flanagan.

Thomas J. Keevers, Hoover & Braselton, Chicago, IL, Vincent M. Garvey, Carlotta P. Wells, Federal Programs Branch Civil Division—U.S. Dept. of Justice, Washington, DC, William H. Theis, Chicago, IL, for Melvin O. Schabilion, Norbert Kuksta.

James M. Shellow, Shellow, Shellow & Glynn, S.C., Milwaukee, WI, Beth J. Kushner, Gibbs, Roper, Loots & Williams, Milwaukee, WI, Vincent M. Garvey, Carlotta P. Wells, Federal Programs Branch Civil Division—U.S. Dept. of Justice, Washington, DC, William H. Theis, Chicago, IL, for Saul "Buddy" Weinstein.

Vincent M. Garvey, Carlotta P. Wells, Federal Programs Branch Civil Division—U.S. Dept. of Justice, Washington, DC, for Unknown Defendants, U.S., Drug Enforcement Admin.

### *MEMORANDUM OPINION AND ORDER*

SHADUR, Senior District Judge.

Denise Markham ("Markham") and Marion Morgan ("Morgan") (collectively "Name Plaintiffs") are female police officers who attended training seminars conducted by the United States Drug Enforcement Administration ("DEA") at which the five named defendants ("Individual Defendants") were instructors. Name Plaintiffs have sued Indi-

vidual Defendants over the sexually harassing and offensive manner in which their instructional portions of the programs were conducted, and now seek Fed.R.Civ.P. ("Rule") 23 certification[1] of a class of all women who attended such seminars since April 5, 1993. For the reasons set forth in this memorandum opinion and order, the motion for class certification is granted.

### Facts

Markham and Morgan have been employed by the Madison, Wisconsin police department for 5 and 14 years respectively. Individual Defendants Francis E. White ("White"), Melvin O. Schabilion ("Schabilion"), Michael Flanagan ("Flanagan"), Saul "Buddy" Weinstein ("Weinstein") and Norbert Kuksta ("Kuksta") are law enforcement training officers currently or formerly employed by the DEA out of its Chicago Field Office. "Other Unknown Defendants" are DEA supervisory personnel responsible for overseeing Individual Defendants' performance of their training duties.

According to the First Amended Complaint ("FAC"), Individual Defendants conducted training seminars for state, county and municipal law enforcement officers. Two types of seminars, the "Basic Narcotics Course" and the "Narcotics Officer Survival School," are at issue. Both provided education about illegal drugs and law enforcement strategies and techniques regarding drug-related criminal activity. They were intended to benefit the law enforcement officers who participated by increasing their technical knowledge and skills, leading both to greater personal security for the participants and their colleagues and to possible career advancement for the participants. FAC ¶ 8 alleges that the training available at the seminars was difficult to obtain elsewhere.

In May 1994 Morgan attended a two-week "Basic Narcotics Course" seminar in Madison, and in September 1994 Markham attended a one-week "Narcotics Officer Survival School" seminar in Camp Douglas, Wisconsin. Other members of the putative plaintiff class attended similar seminars beginning in September 1993 in Green Bay, Wisconsin and ending in September 1994 in Camp Douglas (the same seminar that Markham attended) and in St. Cloud, Minnesota. Seminars were also held in Indiana, Illinois and North Dakota. Name Plaintiffs assert that they have identified about 35–40 women who attended the seminars in those five states in the relevant time period.[2] Some or all of Individual Defendants taught at these seminars. The majority of the law enforcement personnel in attendance at each were male.

Individual Defendants' presentations at the seminars contained numerous explicit sexual references and jokes, derogatory and demeaning references to women in general and female participants in particular, and the showing of slides of nude or scantily clad women. Specifically the FAC alleges that Individual Defendants engaged in these among other outrageous activities:

(1) beginning each seminar with the promise that male participants would go home that night and have aggressive sexual encounters with their wives (FAC ¶ 11(a));

(2) interspersing instructional slides with pictures of nude or scantily clad women (*id.* ¶ 11(c));

(3) referring to women in general as "bitches" and to African–American women in general as "brown sugar" (*id.*);

(4) referring in obscene terms to the United States Attorney General as a lesbian

---

**1.** Rule 23 jurisprudence has developed its own set of shorthand terms that are almost invariably used in place of the Rule's precise language— "certification," instead of the actual Rule 23(c)(1) locution that calls for the court to "determine by order whether it [the action] is to be so maintained [as a class action]," is one such term. This Court will not break the judicial pattern in that respect, though it has in the past characterized one or two of the shorthand terms as barbarisms from the English purist's perspective.

**2.** Those figures reflect the posture of the case when the current motion was in the briefing stage. On January 28, 1997 Name Plaintiffs submitted the names of another dozen women who also come within the proposed class definition.

and as having a lesbian relationship with the First Lady (*id.*);

(5) using sexual terms to describe law enforcement work, such as describing drug reconnaissance as "getting laid" or "getting her drunk and finding a hotel," talking about DEA agents getting "horny" if they were unable to kill people on a regular basis, commenting that using explosives would give the male participants an erection and talking regularly about male erections in terms such as "chubby," "woody," "johnson" and "pecker," among others (*id.* ¶ 11(d)-(e));

(6) grabbing their own genitals repeatedly for emphasis or humor (*id.* ¶ 11(e)); and

(7) making sexual remarks to or about female participants, such as:

(a) one of the defendants, observing Markham prone on the rifle range, grabbing his genitals and yelling, "I'm getting a hard on," causing male participants to laugh (*id.* ¶ 11(f));

(b) requesting the assistance of female participants during demonstrations because "it [is] more interesting to watch a pretty girl" (*id.*);

(c) referring to a female participant as "Jiggling" and asking her to turn sideways so that other participants could see her breasts (*id.*);

(d) making repeated sexual references during demonstrations, such as asking a female participant to "put your hot little hands on the bag, give it a good squeeze, you'll get it going" (*id.*); and

(e) referring to female participants as "honey," "babe," "little girl" or "brown sugar" (*id.* ¶ 11(c)).

FAC ¶ 10 alleges that such conduct created a sexually hostile and intimidating environment that prevented the proposed plaintiff class from benefitting to the same extent as did male participants.

Name Plaintiffs have brought three claims in the FAC. Count I sets forth a *Bivens* claim alleging that Individual Defendants violated their right to equal protection. Count II asserts a claim of conspiracy in violation of 42 U.S.C. § 1985(3) against Individual Defendants. Count III advances a claim under 42 U.S.C. § 1986 against Other Unknown Defendants for their failure to prevent Individual Defendants' wrongful conduct.

Class allegations in FAC ¶ 15 initially defined the proposed plaintiff class as "all women who have attended DEA training seminars conducted by one or more of the individual defendants during the past two to six years prior to the filing of this lawsuit and who have been subjected to a sexually hostile training environment by conduct similar to the conduct described above in paragraphs 11 and 12." P. Mem. 1 has since limited the proposed class to women who have attended such seminars since April 5, 1993.[3]

### Class Certification

Rule 23(a) sets forth four basic requirements that a proposed class must satisfy before an action may proceed as a class action—elements commonly referred to as (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation. To be certified, a class must also satisfy at least one of these additional requirements set forth in Rule 23(b):

(1) there is a risk that separate actions by individual members of the class would (A) result in inconsistent judgments "establish[ing] incompatible standards of conduct for the party opposing the class" or (B) produce individual adjudications that "would as a practical matter be dispositive of the interests of the other [class] members ... or substantially impede their ability to protect their interests"; or

(2) the opposing party has acted or refused to act on grounds applicable to the class as a whole, so that injunctive or declaratory relief is appropriate as to the entire class; or

---

**3.** Although Name Plaintiffs have offered no explanation for that limitation, it is presumably based upon Judge Plunkett's ruling in his November 7, 1995 opinion that the claims of a third originally-named plaintiff, Mary Lou Ricksecker, were time-barred under the applicable two-year statute of limitations.

(3) common questions of law or fact predominate over individual questions, and a class action is the superior method for resolving the case.

It is of course the burden of the party seeking certification to demonstrate that the case satisfies the Rule 23 requirements (*Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir.1980)). "Failure to meet any one of the requirements of Rule 23 precludes certification of a class" (*Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir.1976) (per curiam) ). However, no court has "any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action" (*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974)).[4]

### Rule 23(a)

#### Numerosity

■ To satisfy the numerosity requirement plaintiff need not specify the number of class members with precision, but mere speculation is not enough (*Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.1989)). From documents produced by DEA plaintiffs have identified 35–40 women who attended seminars at which Individual Defendants taught in the relevant five-state area since April 5, 1993, and as n. 2 reflects that number has just been increased by 12. As is true elsewhere, in this district some smaller classes (with as few as 17 to 30 members) have been certified (see *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill.1986) and cases cited there).

■ Individual Defendants object on the grounds that 18 of the originally identified women deny that anything offensive occurred or else found the training to be beneficial so as to have no claim for a "sexually hostile training environment," leaving only 16 women as members of the class. Such an objection is inappropriate, for it addresses the merits of the class claims (see *Meiresonne v. Marriott Corp.*, 124 F.R.D. 619, 623 (N.D.Ill. 1989)). Moreover, Individual Defendants have cited no authority for the proposition that the women's receipt of some benefit from the seminars defeats their claim that Individual Defendants' conduct caused women participants to receive less benefit than male participants.

Individual Defendants also argue that Name Plaintiffs have not shown that joinder is impracticable as Rule 23(a)(1) requires. That argument has of course lost some steam with the recent one-third enlargement of the class. Moreover, members of the originally proposed class reside in five different states, and few of them reside in the same district. "If all members are not found within the same district, impracticability of joinder is increased" (*Riordan*, 113 F.R.D. at 62). Finally Individual Defendants' argument improperly focuses on the ability of class members to bring individual actions, not on plaintiffs' ability to join them in this action. Plaintiffs have made a sufficient showing that the proposed class satisfies the numerosity requirement.

#### Commonality

■ Existence of a common nucleus of operative fact is usually enough to satisfy the commonality requirement (*Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992)).

---

4. Substantial possible revisions to Rule 23 are in the works, having been proposed by the Judicial Conference Advisory Committee on the Civil Rules, with public hearings having been completed within the last two weeks and with all written comments from the public due by February 15, 1997 to enable the Judicial Conference Committee on Rules of Practice and Procedure to make its recommendations—the next rung on the ladder leading to possible adoption of a Rule amendment. Among the proposed changes is an addition to the Rule 23(b)(3) predominance determination identifying as one matter [ ] pertinent to the findings (proposed Rule 23(b)(3)(F)):

whether the probable relief to individual class members justifies the costs and burdens of class litigation....

Advisory Committee minutes of its April 18 and 19, 1996 meeting reflect an extended discussion of whether language should be included to incorporate a reference to consideration of the merits at the certification stage, opening the door to a movement away from Eisen's teaching. Though the Committee ultimately voted 7–6 to say nothing on that score in proposed Rule 23(b)(3)(F), the minutes really have to be read to understand the dynamics of (and any inference or lack of inference) to be drawn from that action (or inaction).

Here Name Plaintiffs have alleged (and, indeed, have provided evidence) that Individual Defendants made either the same or substantially similar offensive comments in each of the seminars attended by members of the proposed class.

Individual Defendants argue that what each class member saw or heard at any given seminar differs. D. Mem. 8 n. 7 cites to differences in the recollections of potential class members as to Individual Defendants' conduct, as noted in evaluations prepared after the seminars or interviews conducted during a DEA investigation. But that does not show that common questions of fact or law do not exist (*Rosario*, 963 F.2d at 1017). Just because every single woman who attended a particular seminar does not recall the same comments does not mean the comments were not made. Nor does the inclusion of positive comments about the value of a seminar as a whole negate negative comments about Individual Defendants' offensive behavior. Such objections incorrectly focus on the class members' perceptions rather than on Individual Defendants' conduct. To establish liability the proper inquiry is an objective one that asks what the Individual Defendants said and did at each seminar, not what each member of the plaintiff class heard and saw.[5]

■ Inquiry into each class member's subjective perception and response will of course be relevant to damages. But individual differences in that respect do not detract from the satisfaction of the commonality standard. As 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil 2d* § 1763, at 196–98 (2d ed. 1986) ("Wright, Miller & Kane") (footnotes and numerous citations omitted) explains in connection with the highly permissive reading given Rule 23(a)(2) in the case law:

Rule 23(a)(2) requires that "questions of law or fact common to the class" be present in order to maintain a class action. It is important to note that this provision

does not require that all the questions of law and fact raised by the dispute be common; nor does it establish any quantitative or qualitative test of commonality. All that can be divined from the rule itself is that the use of the plural "questions" suggests that more than one issue of law or fact must be common to members of the class.

More on this later in the sections dealing with typicality and with Rule 23(b).

### Typicality

■ *Rosario*, 963 F.2d at 1018, quoting *De La Fuente v. Stokely–Van Camp Inc.*, 713 F.2d 225, 232 (7th Cir.1983), is typical of the many opinions that explain the typicality requirement:

We have previously stated that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."

Individual Defendants assert that the Markham and Morgan claims are not typical because some potential class members denied hearing any offensive remarks when they prepared evaluations or were interviewed by DEA. Again that argument goes to the merits of plaintiffs' claims and is inapropros to deciding class certification.

Individual Defendants also claim that Markham's and Morgan's claims are not typical because each has filed a claim against the United States in the Court of Federal Claims ("Claims Court") under the Federal Tort Claims Act, seeking the same damages sought here. Individual Defendants fail to explain the relevance of that fact. By definition Markham's and Morgan's Claims Court actions are against the federal government, while this action is against Individual Defendants in their individual capacities. Individual Defendants have not identified any defense unique to Markham and Morgan based on the Claims Court actions.[6]

---

5. Of course, the testimony of class members as to what they saw and heard Individual Defendants do will be relevant evidence as to liability, as well as bearing on damages if and when the individual plaintiffs' claims reach that stage.

6. No ruling is made or suggested here as to whether any Claims Court judgment against the United States would affect the damages collectible here on some principle of double recovery. Because the certification here is not defeated by

As with Rule 23(a)(2), the cases have not been overly demanding by requiring an identity rather than the typicality of claims as a precondition to certification. Again 7A Wright, Miller & Kane § 1764, at 235, describes the flexibility of judicial attitudes in that respect:

> Although a few courts have held that the representatives' claims are typical when they are co-extensive with those of the other class members, this test has not been generally adopted. To the extent that "co-extensive" might suggest that the representatives' claims must be substantially identical to those of the absent class members, it is too demanding a standard. Quite properly, a number of courts have taken a more permissive approach to Rule 23(a)(3). Thus, the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class.

### Adequacy of Representation

■ To be an adequate class representative, a name plaintiff (1) must not have claims that are antagonistic to or conflict with those of the other class members (*Rosario*, 963 F.2d at 1018); (2) must have a sufficient interest in the outcome of the case to ensure vigorous advocacy (*Riordan*, 113 F.R.D. at 64); and (3) must have attorneys competent, experienced, qualified and generally able to conduct the litigation vigorously (*Kriendler v. Chemical Waste Mgmt. Inc.*, 877 F.Supp. 1140, 1159 (N.D.Ill. 1995)). Individual Defendants contend that because Markham and Morgan waited 18 months after filing this action to seek class certification, they are not ensuring vigorous advocacy. But as Name Plaintiffs point out, Individual Defendants' various Rule 12(b)(6) motions were not resolved until April 1996, and Name Plaintiffs moved for certification six months later (only one month after re-

ceiving important documents from DEA[7]). That delay alone is not a sufficient reason to find Name Plaintiffs inadequate representatives.

■ Individual Defendants also assert that Markham and Morgan have conflicts with the claims of other class members because four potential class members do not want to participate in this action, because Name Plaintiffs have claims pending in the Claims Court and because Individual Defendants have threatened to sue them and their attorneys for libel. However, Individual Defendants fail to offer any valid reason to believe that an impermissible conflict exists. It is irrelevant that some potential class members disagree with this action. Unanimity among members of the proposed class is not required, and Individual Defendants have cited no authority holding that it is. As already stated, it is also irrelevant that Markham and Morgan have claims pending in the Claims Court, for they have sued a different party there and those claims are not in conflict with this action. Finally, Individual Defendants have not sued Name Plaintiffs or their counsel for libel in any court and have failed (as Name Plaintiffs point out) to identify any particular libelous statement. If the threat of an adverse claim were sufficient to render a name plaintiff an inadequate class representative, one wonders how many class actions would be certified.

There is no evidence that Markham and Morgan have claims that are antagonistic to those of any class member. While they might have been more prompt in moving for class certification, any delay in that respect has not been so substantial as to make them inadequate representatives. And they have submitted the curricula vitae of their three attorneys (Scarr Aff. Ex. C), which amply demonstrate their experience with civil rights and class action litigation. Consequently Markham and Morgan have shown that they

the possibility that there may be individualized damage determinations if the plaintiff class proves successful, that question is irrelevant to the present decision.

7. P.R. Mem. 11 n. 9. asserts that obtaining DEA's documents was substantially delayed by protracted negotiations with DEA over the terms of a protective order and by delays in securing Individual Defendants' signatures on that order.

are adequate representatives of the proposed class.

\*     \*     \*

In sum, Name Plaintiffs have shown that the proposed class satisfied all four requirements of Rule 23(a). This opinion turns then to the other branch of the required showing, that under Rule 23(b).

### Rule 23(b)

█ Although Name Plaintiffs argue that the proposed class satisfies all three branches of Rule 23(b), the Rule itself requires that only one must be satisfied. This opinion will address only the requirement of Rule 23(b)(3) that common questions of law or fact must predominate and that a class action is the superior method of adjudicating the claims at issue. As already discussed, the allegations as to Individual Defendants' conduct at the seminars in question shows that the same or substantially similar comments were made at each. Proof of Individual Defendants' behavior will thus be virtually identical for all class members. Common questions of fact and law surely do predominate at the liability stage at a minimum.

█ For the same reason a class action is the superior method for adjudicating this controversy. Requiring each class member to bring a separate action would require repetition of largely the same evidence as to Individual Defendants' conduct. Subjecting the class members, Individual Defendants and the federal courts to separate lawsuits would needlessly waste everyone's time and money.

To be sure, it seems likely that some variances will emerge among the class members' claims, most probably as to their respective damages if the class is successful in establishing Individual Defendants' liability. But that prospect does not upset the present predominance determination, and as and when that occurs the court will have available to it the potential application of Rule 23(c)(4)(A),—see, e.g., 7B Wright, Miller & Kane § 1790, at 271 & n. 15 and cases cited there, including Judge Harlington Wood's discussion in *Denberg v. United States R.R. Retirement Bd.*, 696 F.2d 1193, 1207–09 & n. 8 (7th Cir.1983) in the course of dissenting from a dismissal for lack of subject matter jurisdiction. And in that respect this action is much like that upheld for class certification in *De La Fuente*, 713 F.2d at 233. Both that case and this action contrast sharply with the situation addressed in *In re Rhone–Poulenc*, 51 F.3d 1293 (7th Cir.1995), where massive nationwide class certification was rejected for reasons dramatically different from those involved here.

Name Plaintiffs' proposed class thus satisfies the requirements of Rule 23(b)(3) as well. They have met their burden under Rule 23 in its entirety.

### Conclusion

Name Plaintiffs' class meets the demands of Rule 23. Their motion for class certification is therefore granted. This action may be maintained as a class action for a class of all women who have attended DEA training seminars conducted by one or more of Individual Defendants since April 5, 1993 and who have been subjected to a sexually hostile training environment by the type of conduct described in the FAC.