Rosalind **WARNELL, Suzette Wright, Madonna Howarth, Cynthia Smith, Beryl Parker, Sharon Dunn, Vera Boyland and Latanja Manson, each individually and on behalf of other similarly situated persons, Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

**Althea Rapier, Jodi Farris, Rhonda Evans, Gwanjuana Gray, Victoria Williams and Deanne Harrigan, individually and as class representatives**

v.

**Ford Motor Company, Defendant.**

**No. 98 C 1503, 98 C 5287.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 15, 1999.

As Amended Nov. 1, 1999.

Keith L. Hunt, Katherine Ann Rodosky, Keith L. Hunt & Associates, P.C., Chicago, IL, Edward R. Vrdolyak, Attorney at Law, Tinley Park, IL, Daniel L. Berger, Bernstein, Litowitz, Berger & Grossmann LLP, Darnley Stewart, Nancy Lipin, Berger, Litowitz, Berger & Grossman, New York City, Vanessa L. Vanessa Smith, Attorney at Law, Chicago, IL, for plaintiffs.

James W. Gladden, Jr., Marcia E. Goodman, Maritoni D. Kane, Kristen Wenstrup Crosby, Shannon Michelle Moritz, Susan E. Provenzano, Mayer, Brown & Platt, Chicago, IL, Brian D. Boyle, Evelyn L. Becker, Teresa Kwong, O'Melveny & Myers, Washington, DC, Debra S. Belaga, O'Melveny & Myers, San Francisco, CA, Catherine B. Hagen, Mark Teuton, O'Melveny & Myers, Newport Beach, CA, Samuel Fifer, Sonnenschein, Nath & Rosenthal, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiffs here are present or former employees at Ford Motor Company ("Ford") who allege that they and other women employees of Ford were subjected, among other wrongs, to pervasive and systematic sexual harassment at work. Two separate groups of plaintiffs sued Ford, alleging claims as individuals and class members for race and sex discrimination and sexual harassment under Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981, as well as various state law claims. Their joint motion for class certification is based solely on the Title VII sex discrimination claims. I grant the motion to certify the classes with respect to those claims. Other claims which have not been already dismissed may be prosecuted by the named parties as individuals. In addition, the plaintiffs move for consolidation of their cases, and I grant that motion as well, and so refer hereafter to "this case" in the singular. I also grant the plaintiffs' motion to communicate with the class and deny as moot Ford's motions concerning discovery in regard to litigation about the certification of the class.

### I.

This case is brought by fourteen women now or formerly employed at the Chicago Ford Assembly Plant (the "Assembly Plant") or the Chicago Ford Stamping Plant (the "Stamping Plant") in Chicago, Illinois. They represent themselves and move to represent any woman employed at those plants from December 2, 1993 until today. The Stamping Plant currently has about 176 women out of 1,800 hourly employees and 19 women out of about 180 salaried employees. The Assembly plant has 600 women total out of 2,646 hourly and 205 salaried employees. The hourly employees are production workers; the salaried employees are in the main managerial and supervisory. Unionized employees at both plants are represented by the United Auto Workers ("UAW") under the UAW–Ford Master Agreement.

The plaintiffs allege that women employees at these plants have been subject to a pervasively hostile, intimidating, and abusive work environment. The EEOC investigated and concluded in September 1998 that "a class of female employees at Ford's Chicago area manufacturing facilities has been subject to sexual harassment by managers and non-managers." The EEOC found that women employees had been called "bitches, whores and offensive references to female genitalia" as well as being "grabbed, groped, and ... massaged without their consent." Women have been subject to "sexually explicit graffiti" with references to specific named women at the plants, and to pornographic materials which "contribute[d] to the hostile and sexually offensive environment." The EEOC made similar findings in January 1996 in connection with another case brought in this court by women Stamping Plant employees, *Rivera v. Ford Motor Co.*, No. 95 C 2990, which was subsequently settled.

The plaintiffs here also claim that at least through 1997 and 1998, strippers and prostitutes regularly performed at Ford Christmas and other parties, including some parties on the plant premises, which were attended by hourly and supervisory employees and that photographs and films of this behavior were taken at some of these company-advertised functions. Some of these photos, the plaintiffs say, were displayed in the plant.

According to the plaintiffs, Ford knew of these and similar problems for years, from at least when female employees filed EEOC complaints in 1994. In 1995, the *Rivera* lawsuit led to the 1996 EEOC determinations mentioned above. Ford has a "Zero Tolerance" sexual harassment policy, but plaintiffs allege that the company's complaint procedure, which apparently favors grieving com-

plaints through the union, is ineffective and poorly advertised, and in any case the plaintiffs claim that the union discourages sex discrimination grievances. (The UAW is not, however, a defendant here.) The plaintiffs claim that Ford's personnel policies are centralized but that its investigative procedures are inadequate and that Ford does not consistently and effectively discipline harassers.

In view of their injuries and allegations, the plaintiffs request: (1) a permanent injunction against further discrimination and harassment, (2) an order requiring Ford to implement effective steps to eliminate discrimination, (3) compensatory and (4) punitive damages, and any other appropriate relief.

After much litigation over several years in the case before us and its predecessors, Ford and the EEOC announced in September 1999 that they had entered into a Conciliation Agreement (the "Agreement") to resolve these problems. The EEOC and Ford effectively excluded the plaintiffs from the discussions leading to the Agreement, despite the fact that they were the charging parties in the case which ultimately led to the agreement.[1] The Agreement runs for three years and involves creation of new policies to prevent and remedy sexual harassment and retaliation, which policies are to be overseen by a panel with three members, one each from the EEOC and Ford and a third member acceptable to both parties. Ford also promises to make good faith efforts to promote more women to first line supervisory positions at the plants. Finally, the Agreement provides for $7.5 million to compensate women affected at the plants since January 1, 1996. Persons who accept money under the Agreement release Ford from claims for liability in connection with sexual harassment. The Agreement does not establish clear standards or guidelines for award of damages.

## II.

Rule 23(a) of the Federal Rules of Civil Procedure provides for certification of a class when the following conditions are met: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *Shvartsman v. Apfel,* 138 F.3d 1196, 1201 (7th Cir.1998). I must further determine whether the case is certifiable as a class action "for purposes of injunctive relief" under Fed.R.Civ.P. 23(b)(2), *Isby v. Bayh,* 75 F.3d 1191, 1194 (7th Cir.1996), and so not requiring notice to absent class members and an opportunity to opt out, *Blair v. Equifax Check Services, Inc.,* 181 F.3d 832, 836 (7th Cir.1999), or as a class action to obtain damages under Rule 23(b)(3), under which unnamed members have a right to notice of the pending class action and to an opportunity to opt out, under Rule 23(c)(2), *Pabst Brewing Company, Inc. v. Corrao,* 161 F.3d 434, 439 (7th Cir.1998). The plaintiffs ask for certification under Rule 23(b)(2) and 23(b)(3), and I agree that they are entitled to certification under both classifications, although the class certification under Rule 23(b)(3) will of course require notice to absent class members.

 The parties seeking class certification assume the burden of demonstrating that certification is appropriate. *Retired Chicago Police Assoc. v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). Generally, a district judge should consider certifying a class or deny certification prior to any ruling on the merits, *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 474 (7th Cir.1997), and I do so here.

### A.

The core of Ford's argument is that the plaintiffs' claim fails under Fed.R.Civ.P. 23(b)(3) because sexual harassment claims by their nature require highly individualized treatment and, therefore, it is not the case that (1) common issues of law and fact predominate and (2) a class action is superior to other forms of adjudication. Ford argues in effect that no sexual harassment case can be

---

**1.** The EEOC says that it initially involved some of the plaintiffs here in the discussions, but "sev-

ered" them when they would not agree to the terms of the current Agreement.

maintained as a class action. This is a bold and striking claim, but one quite without merit.

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficient cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Discrimination cases generally are well-suited for class actions, as the alleged discrimination is often by its very nature class-based with classwide injuries and common legal and factual issues. *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). A Title VII class representative, however, must comply with the same prerequisites applicable to all class actions. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Certification of a Title VII class action, as with any other class action, depends upon the trial court conducting a "rigorous analysis" and being satisfied with the plaintiff's compliance with Rule 23. *Id.* at 161, 102 S.Ct. 2364. A disparate treatment case may be a suitable subject for class certification if the Rule 23 conditions are met. *See id.* at 157, 102 S.Ct. 2364.

I hold that the plaintiff's sexual harassment claims here predominate over any individual issues. . The allegations in this case are very similar to those in sexual harassment case certified by Judge Shadur, *Markham v. White*, 171 F.R.D. 217 (N.D.Ill. 1997), where women police officers at training seminars alleged that they were systematically subjected to derogatory sexual terms ("bitches," "brown sugar," "babe," etc.), photographs of nude or scantily clad women, suggestive remarks ("Put your hot little hands on the bag, give it a good squeeze, you'll get it going."), and so forth. *Id.* at 219–220. With minor variations these might be quoted from the EEOC findings in the present case. The main difference is that the plaintiffs here allege generalized groping and other offensive physical contact, but, as with *Markham*, substantially similar comments and other behaviors are alleged here and proof with respect to liability for the various specific instances will be much the same. *See id.* at 224. Variances as to individual damages do not necessarily upset the predominance determination where a court can use Rule 23(c)(4)(A)(partitioning a class into subclasses) if necessary. *Id.*

Ford contends that the legal standards governing sexual harassment mandate an individualized inquiry, thus ruling out the very idea of a sexual harassment class action. In a hostile working environment case, the plaintiffs must prove that the conduct complained of made their working environment both objectively and subjectively hostile. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Subjective hostility, Ford says, requires an individualized inquiry because some women may welcome what others may abhor, and so no class can be certified.

This is bold but not persuasive. I agree with the Central District of Illinois, which, in considering virtually identical facts about pervasive sexual harassment at the Mitsubishi auto plant, held that "the landscape of the total work environment, rather than the subjective experiences of each individual claimant, is the focus for establishing a pattern or practice of unwelcome sexual harassment which is severe and pervasive." *EEOC v. Mitsubishi Motor Mfg. of America, Inc.*, 990 F.Supp. 1059, 1074 (C.D.Ill.1998). "The existence of a company's policy of tolerating sexual harassment is the basis for pattern or practice liability." *Id.*

I do not hold, as the district court held in *Mitsubishi* with respect to an EEOC case, that the sort of case presented here requires no showing of subjective hostility. *Id.* at 1076. On the contrary, I hold that the required showing will not call for individualized hearings for each class member in view of the posture of this case, as with *Markham*, 171 F.R.D. 217, cited above. The Seventh Circuit has held that " '[w]elcome sexual harassment' is an oxymoron." *Carr v. Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007, 1008 (1994). Since in that case there was no evidence plaintiff manifested "enthusiastic receptiveness" to crude and suggestive conduct, the court said, "of course it was unwelcome." *Id.* at 1011. I do not understand Ford "to be suggesting that

[plaintiffs] enjoyed or appeared to enjoy the campaign of harassment against [them]," *id.*, nor do I think that the law requires, other things being equal, that a woman must introduce further evidence that she finds it subjectively hostile to be called a cunt, named in pornographic graffiti, groped without her consent, subjected to other similar conduct that the plaintiffs here allege is widespread and pervasive at Ford's plants. Ford may of course introduce evidence that specific women felt otherwise.

*Mitsubishi* was an EEOC case and not a Rule 23 case involving certification of a class, but the issue here concerns the standards for proof of sexual harassment, and the Supreme Court has held that "it is plain" that the elements of a prima facie case are "the same" whether prosecuted in a private class action or by the EEOC. *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876, 104 S.Ct. 2794, 81 L.Ed.2d 718 n .9. Ford's argument that satisfaction of the objective prong of the inquiry requires a case-by-case determination is both implausible and conclusory.

Finally,[2] the recent availability of new employer affirmative defenses under *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), is not to the point. It cannot be that the mere availability of an affirmative defense applicable to some but not all plaintiffs means that individual claims necessarily predominate, or defendants would have an automatic means to deny certification of virtually any class action. That is not the law. The issue of predominance is rather "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623, 117 S.Ct. 2231. Defenses that are specific to the named representative may defeat· class certification if they are "arguable and likely to usurp a significant portion of the litigant's time and energy." *Rozema v. Marshfield Clinic*, 174 F.R.D. 425, 440 (W.D.Wis.1997) (addressing adequacy of representation and typicality under Rule 23(a)). In view of the small number of similar affirmative defenses available in relatively similar factual circumstances here, the affirmative defenses will not have those effects and, accordingly, I find that the proposed class will be sufficiently cohesive.

I find, further, that a class action is a superior means for managing this case because of the efficiencies involved in addressing the claims of about 850 class persons. Notwithstanding Ford's dire warnings about huge class actions clogging my docket, I cannot look forward, either, to repeated adjudication of sexual harassment claims piecemeal and *seriatim* as brought forward first by the fourteen named plaintiffs and then by any other plaintiffs who may choose to sue, including the two whom Ford says still have outstanding EEOC charges against it. Moreover, the class action will permit adjudication of possibly meritorious claims which otherwise might not be brought on behalf of women who are unable or unwilling to sue their employer, a risky and frightening business even for a brave employee.

In any event, no crisis exists, nor need one exist to warrant certification of a class. Contrary to Ford's impression, a class action is not a fire ax behind glass, a last resort in a crisis, but a tool of case management. Among other advantages it "concentrates litigation in a single forum, where it may be resolved more readily than a series of suits could be" and "permit[s] the aggregation and litigation of many small claims that otherwise would lie dormant.... [It] provides compensation that cannot be achieved in any other way; ... [and] serves a deterrent function by ensuring that wrongdoers bear the costs of their activities." *In the Matter of American Reserve Corp.*, 840 F.2d 487, 489 (7th Cir.1988).

### B.

Plaintiffs also meet the standards of Rule 23(b)(2), the kind of class action praying for injunctive or declaratory relief, at least with respect to their requests for such relief. This rule requires that (1) injunctive or declaratory relief must be the predominant

---

**2.** Ford presents a number of other arguments that a requirement of an individualized inquiry prevents class certification which, being frivolous, do not merit discussion.

form of relief sought, and (2) the defendants must have acted on grounds generally applicable to the class. A class action seeking declaratory and injunctive relief from a pattern or practice of employment discrimination in violation of Title VII is "obviously the paradigm of a Rule 23(b)(2) class action." *Kyriazi v. Western Electric Co.*, 647 F.2d 388, 393 (3rd Cir.1981). "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" where the party opposing the class has acted on grounds generally applicable to the class. *Amchem Prods.*, 521 U.S. at 614, 117 S.Ct. 2231.

Plaintiffs request a permanent injunction and a declaration of liability against Ford in a situation where this relief would be in order because, if the plaintiff's allegations are true, Ford has countenanced sexual harassment of the women employees in the class as a group. I find that plaintiffs here "are primarily seeking injunctive relief.... The claim for monetary damages could be characterized as incidental to the request for an injunction." *Senn v. United Dominion Indus., Inc.*, 951 F.2d 806, 813 (7th Cir.1992).

Ford has two objections. The first is that a Fifth Circuit panel has held that compensatory damages under Title VII are not incidental to class-wide injunctive or declaratory relief. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 417 (5th Cir.1998). The panel majority, however, rejecting a petition for rehearing, makes clear that it held no such thing: "The trial court utilized consolidation under [R]ule 42 rather than class certification under [R]ule 23 to manage this case.... [and] we find no abuse [of discretion] in its determinations." *Id.* at 434. Any statements about Rule 23 in *Allison* are therefore dicta and not law even in the Fifth Circuit, which, of course, has no jurisdiction in Illinois. In any event I agree with the Middle

District of Florida that "it [is] difficult to imagine that a bright-line rule applies to deny a district court the discretion to grant class certification under Rule 23(b)(3) in every Title VII case in which the plaintiffs seek compensatory and punitive damages and a jury trial." *Carter v. West Publishing Co.*, No. 97–2537–CIV–T–26A, 1999 WL 376502, at *8 (M.D.Fla. May 20, 1999). The Seventh Circuit has adopted no such rule and, indeed, as explained, neither has the Fifth Circuit.

■ Ford's second argument against Rule 23(b)(2) certification is that the Conciliation Agreement between Ford and the EEOC has given the plaintiffs everything they want by way of injunctive relief—training, policies, and procedures to prevent sexual harassment—and so the issue of injunctive relief is now moot. The plaintiffs, however, note, among other things, that they request a permanent injunction backed by the sanctions of contempt of court, while the Agreement runs for three years with only a possibility of an extension if called for by its supervisory panel of three, which includes one member from Ford and one member acceptable to Ford. Moreover the plaintiffs want a judicial declaration that Ford is liable for civil rights violations, while the Agreement contains the usual boilerplate language about not admitting any liability. In short, the Agreement lacks bite. Comparing the details of the Agreement to the range of possible injunctive and declaratory relief obtainable in litigation, I agree with the plaintiffs that the Agreement has not mooted the question of injunctive relief.[3]

I find, furthermore, that Ford has acted on grounds generally applicable to the class in that its actions may be viewed as part of a pattern. *See Honorable v. the Easy Life Real Estate*, 182 F.R.D. 553, 561 (N.D.Ill. 1998). Plaintiffs have alleged that Ford's

---

3. The EEOC admits that it excluded the plaintiffs from participating in the negotiations leading up to the Agreement after it became clear that they would not make the concessions that Ford demanded and the EEOC accepted. The EEOC says that its legal mandate is to conciliate before it litigates. It is not, however, required to reach just any conciliation, and its conduct here has been disappointing. Plaintiffs will be unable to find attorneys to represent them if the agency

can head off a lawsuit with an agreement that cuts out the plaintiffs, in effect giving defendant employers a free pass to violate the law after the agreement expires, since the EEOC will be satisfied and attorneys will think twice about putting the effort to develop a case which the agency will take away from them. This provides a strong policy reason to permit plaintiffs to proceed as a class if they satisfy the legal prerequisites for certification.

policies about and enforcement of sexual harassment rules were inadequate in the context of a centralized personnel system. That suffices for a consistent pattern of action towards plaintiffs. Ford asks me to hold that the plaintiffs' claims are not true, but that would go to the merits, which I cannot do here and would be premature in any event.

### C.

■ The Rule 23(a) arguments are quickly dispensed with. Ford does not dispute (1) that the plaintiff class is so numerous that joinder is impracticable, Fed.R.Civ.P. 23(a)(1), and indeed, with a class of about 850 members it is obvious that the numerosity requirement is satisfied.

Ford does contend that the plaintiffs have not shown that (2) there are questions of law or fact common to the class, Rule 23(a)(2), and that the claims of the representative parties are typical of the class. Rule 23(a)(3). Here, Ford's argument boils down to a version of its claim, already discussed and rejected, that no class action can be maintained for sexual harassment where the alleged harassment involves disparate conduct, perpetrators, victims, and surrounding circumstances in a decentralized employment context, causing different harms in different degrees.

My determination in *Blaz v. Galen Hosp. Illinois, Inc.,* 168 F.R.D. 621 (N.D.Ill.1996)(toxic tort context), cited by Ford, is not to the point, or rather points in the opposite direction, since I there held that commonality " 'does not require that the class have all the same issues in common. . . . "[S]ome factual variation among the class grievances will not defeat a class action." *Id.* at 623; *see also Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir.1992). In fact even a single issue which is common to the class will meet the requirement." *Blaz,* 168 F.R.D. at 623–624. (internal citations omitted). Here the sexual harassment is the common issue. In *Blaz,* I denied certification on typicality grounds, because, in a toxic tort case with injuries alleged to have taken place many years before the lawsuit, individualized findings of causality and harm are

absolutely critical, *id.* at 624 & n. 1 (*citing In re Agent Orange Prod. Liability Litigation,* 818 F.2d 145, 167 (2nd Cir.1987)), but a sexual harassment civil rights case does not necessarily pose those problems, *pace* Ford's arguments to the contrary. Mass toxic torts are in any event a special sort of case, "call[ing] for caution when individual stakes are high and disparities among class members great." *Amchem Prod.,* 521 U.S. at 625, 117 S.Ct. 2231. Here the disparities among class members are insignificant in comparison.

Ford's arguments that the named parties will not adequately fairly and adequately protect the interests of the class are frivolous. Ford objects that the named parties' claims or circumstances are not absolutely identical to one another, but there is no reason to think that the named parties must be qualitatively identical to each other to represent the absent parties fairly. Ford also objects that two of the named parties apparently dislike each other. That is not by itself the sort of conflict which, even if alleged to exist between a named and some absent party, would create a problem with adequacy of representation. *See Rosario,* 963 F.2d at 1018 ("A class is not fairly and adequately represented if class members have antagonistic or conflicting claims.").

### III.

■ The plaintiffs wish to communicate with the class members and inform them of the effect of the Conciliation Agreement on the lawsuit, essentially to notify them that the Agreement does not moot the lawsuit and that using the procedures under the agreement may affect their prospects of monetary damages under the lawsuit. This is reasonable. The situation is like that in *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). There Gulf and the EEOC entered into a conciliation agreement to settle a race discrimination charge and plaintiffs filed a subsequent class action on behalf of a class of employees and applicants. The district court denied the plaintiffs' request to inform the class that using the procedures under that conciliation agreement could affect their rights, and the Supreme

Court ultimately held that this was an abuse of discretion. *Id.* at 103, 101 S.Ct. 2193. The Court said that it was "not appropriate" to promote conciliation over litigation by "restricting information relevant to an employee's choice." *Id.* at 101 n. 14, 101 S.Ct. 2193 (internal citations omitted).

Since I have decided to certify the class, Ford's objection that communication is premature no longer applies. The idea that members of the class are aware of the litigation because of publicity and that therefore they need not hear about its possible effect upon their rights is preposterous. A reasonable person hearing of the Agreement, even if she was aware of the litigation, might wrongly believe that the litigation was now over. In any case she might not know that using the procedures under the Agreement could affect her legal rights.

Ford further objects that the notice is a misleading solicitation. The Supreme Court noted that the notice in *Gulf Oil* was "intended to encourage employees to rely on the class action rather than accept Gulf's offer" but that the district court "identified nothing in the notice it found improper." 452 U.S. at 103, 101 S.Ct. 2193. Ford contends that the communication here is improper because it does not provide an "objective and neutral" evaluation of the Agreement and in particular because it does not tell the class members of the advantages Ford contends the Agreement's procedures have over litigation—that is, it does not tell them Ford's side of the story. I find nothing improper in the communication proposed here, although obviously certain language will have to be changed in view of my decision certifying the class. The statements in the notice are accurate, although they represent the plaintiffs' perspective. Ford requests I order a jointly drafted statement if I allow any communication, but that will not be necessary. I am sure that Ford will find a way to convey its view of the matter to the class members. It need not rely on plaintiffs' postage meter.

I GRANT the plaintiffs' motion to: (1) consolidate the cases, (2) certify the class under Rule 23(b)(3), (3) certify the class under Rule 23(b)(2), with respect injunctive and declaratory relief only, and (4) to communicate with the class about the Conciliation Agreement. Ford's pending motions regarding discovery with respect to the class certification litigation I DENY as moot.