Jim **SWEET, Hashim Khidir, Joe Neglia, Christa Khidir, Chris Sweet, Plaintiffs,**

v.

**PFIZER dba Pharmacia and Upjohn, Boehringer Ingelheim Pharmaceuticals, Inc., Does 1–100, Defendants.**

No. EDCV 05–0052 VAP.

United States District Court,
C.D. California.

Nov. 15, 2005.

Daniel Kodam, Hall and Kodam, Temecula, CA, Soheila S. Azizi, Soheila S. Azizi and Associates, Rancho Cucamonga, CA, for Plaintiffs.

Barry J. Thompson, Michael K. Brown, Mildred Y. Segura, Reed Smith LLP, Los Angeles, CA, Andrea M. Kimball, Edward P. Swan, Jr., Lisa K. Widdecke, Luce Forward Hamilton & Scripps, San Diego, CA, Beth S. Rose, Jennifer Ewers Hurley, Stuart M. Feinblatt, Sills Cummis Epstein and Gross, Newark, NJ, for Defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION FOR ALL PROPOSED CLASSES.

PHILLIPS, District Judge.

Plaintiffs' Motion for Class Certification came before the Court for hearing on November 7, 2005. After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court DENIES the Motion for all proposed classes.

## I. BACKGROUND

### A. Procedural History

Plaintiffs commenced this action against Defendants Pfizer, Inc., ("Pfizer") and Boehringer Ingelheim Pharmaceuticals, Inc., ("Boehringer") on September 13, 2004 in California Superior Court for San Bernardino County.

On January 20, 2005, Boehringer removed the case to federal court, citing diversity of citizenship. [Notice of Removal ¶¶ 3–14.] On the same day, Pfizer joined Boehringer's Removal. On June 22, 2005, Plaintiffs filed an Amended Complaint. On August 25, 2005, the Court issued a Minute Order dismissing two of Plaintiffs' Claims. [Order of August 25, 2005 at 2.] In response to that Minute Order, Plaintiffs filed a First Amended Complaint ("FAC") on September 15, 2005.

The FAC lists nine Claims: (1) Strict Liability for Failure to Warn, (2) Negligent Failure to Warn, (3) Negligence, (4) Breach of Express Warranty, (5) Breach of Implied Warranty, (6) Intentional Infliction of Severe Emotional Distress, (7) Negligent Misrepresentation, (8) Violation of California Business and Professions Code sections 17200 and 17500, and (9) Loss of Consortium. [FAC at 1.]

On September 20, 2005, Plaintiffs filed a Motion for Class Certification and a Memorandum of Points and Authorities[1] pursuant to Federal Rule of Civil Procedure 23. Plaintiffs, under Rule 23(b)(3),[2] ask the Court to certify a national class of persons who were prescribed and took the drug pramipex-

---

1. Plaintiffs' Memorandum of Points and Authorities is 30 pages long, in violation of the Rules of this Court. [*See* Standing Order of United States District Judge Virginia A. Phillips ("Standing Order") ¶ 4.] Plaintiffs did not ask leave to file a Motion longer than that permitted by the Standing Order. Nevertheless, the Court in its discretion will consider the entire Motion.

2. While Plaintiffs do not specify in their Motion for Class Certification which subparts of Rule 23 they are invoking for the two different types of national classes for persons who took Mirapex, the Court will assume the subparts herein.

ole dihydrochloride (sold under the brand name "Mirapex") between July 1, 1997 and the present and suffered from the side effect of obsessive compulsive disorder ("OCD"). [Plaintiffs' Motion for Class Certification (Mot.) at 2.]

Additionally, Plaintiffs ask the Court to certify two subclasses:[3] a national subclass of spouses of persons who were prescribed and took Mirapex from July 1, 1997 to present and suffered loss of consortium; and a California subclass of persons who were prescribed and took Mirapex from July 1, 1997 to present and suffered from the side effect of OCD and their spouses. [*Id.*] Finally, Plaintiffs ask the Court to certify a national class for purposes of injunctive relief under Rule 23(b)(2).[4] [*Id.* at 21, 29.] Plaintiffs included with their Motion to Dismiss a declaration from their counsel, Daniel Kodam.

■ Defendants filed a joint Opposition on October 14, 2005. On the same day, Defendants also filed Joint Evidentiary Objections

to Kodam's declaration.[5] Plaintiffs filed a Reply[6] on October 28, 2005. Attached to the Reply is Plaintiffs' Declaration of Dr. Timothy Fong.[7] On November 4, 2005, Defendants filed Joint Evidentiary Objections to the Declaration of Dr. Fong.[8]

## B. Plaintiffs' Allegations [9]

Defendants' drug Mirapex was approved by the Food and Drug Administration on July 1, 1997. [Mot. at 5.] The drug is used for controlling the symptoms of Parkinson's disease ("PD") and restless leg syndrome. [*Id.*] During the clinical trials, some patients experienced OCD side effects, but Defendants failed to notify the FDA. [*Id.*] After the FDA approved Mirapex, a number of studies and case reports linked Mirapex and other drugs within its class of dopamine agonists with the OCD side effects of gambling, shopping, eating, sexual behavior, as well as other side effects. [*Id.*]

---

3. Plaintiffs fail to state in their Motion which subparts of Rule 23 they are invoking for the two subclasses.

4. Plaintiffs do not state who should be included in this Rule 23(b)(2) class. The Court will assume that the class members are persons who were prescribed and took Mirapex between July 1, 1997 and the present and suffered from OCD.

5. The Court overrules Objections 1 and 2. Objection 3 is sustained on hearsay grounds. Objection 4 is sustained on grounds of lack of foundation and relevance. Objection 5 is sustained on grounds of lack of foundation and speculation.

6. Plaintiffs' Reply is 23 pages long, in violation of the Rules of this Court. [*See* Standing Order ¶ 4.] Plaintiffs did not seek leave to file a Reply longer than that permitted by the Standing Order. Nevertheless, the Court in its discretion, will consider the entire Reply to the extent that it replies to arguments raised in the Opposition and does not raise new issues or introduce new information. *See Martinez–Serrano v. Immigration & Naturalization Serv.*, 94 F.3d 1256, 1259 (9th Cir.1996) (quoting *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir.1990)) (" 'It is well established in this circuit that the general rule is that appellants cannot raise a new issue for the first time in their reply briefs.' ") (brackets omitted).

7. The Court will not consider the Declaration of Dr. Fong, as the moving party in a motion cannot submit new information as part of its Reply. *See Martinez–Serrano*, 94 F.3d at 1259. *See also*

*United States ex rel. Englund v. Los Angeles County*, 2005 WL 2089216, *6 n. 26 (E.D.Cal.2005) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894–95, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)) (" 'It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.' ")

8. Because the Court is not considering Dr. Fong's declaration, it need not rule on Defendants' objections to it.

9. The only evidence submitted in support of Plaintiffs' Motion is the one-page declaration from their counsel, Daniel Kodam. [Declaration of Daniel Kodam ("Kodam Decl.") ¶¶ 1–6.] In the declaration, Kodam asserts that a number of persons have contacted his office claiming to have experienced side effects similar to those claimed by Plaintiffs; Plaintiffs' counsel have experience in handling products liability cases; and two doctors have consulted with Plaintiffs' counsel and confirmed the link between Mirapex and OCD. [*Id.*] Plaintiffs attach no additional evidence to their Motion supporting any of the allegations concerning Defendants' actions or Plaintiffs' symptoms. Additionally, while Plaintiffs cite to a number of "[s]cientific [s]tudies and [c]ase [r]eports," [*id.* at 11–12], they do not offer any of them as evidence. Despite the lack of acceptable evidence supporting many of Plaintiffs' allegations, the Court nonetheless will consider the allegations for the purpose of this Motion.

Plaintiffs Jim Sweet, Hashim Khidir, and Joe Neglia were three of "thousands" of persons who took Mirapex without any warning from Defendants of the drug's tendency to cause OCD. [*Id.*]

Jim Sweet was diagnosed with PD in 1997 and began taking Mirapex about November 1998. [*Id.*] Beginning in February 1999, he began experiencing OCD, and could not control his actions. [*Id.*] Jim Sweet's Mirapex-induced OCD consisted of a shopping compulsion, going to Las Vegas to gamble without telling his wife, over-eating, lying to his wife, committing adultery, and forging checks from his wife's bank account. [*Id.* at 6.]

Jim Sweet's wife, Kristine Sweet, eventually filed for separation from her husband to avoid being responsible for his debts. [*Id.*] In "late September 2003 or early October 2004[sic]," Jim Sweet was told by doctors that his compulsive behavior was caused by Mirapex, and he stopped using the drug. [*Id.*] Since that time, Jim Sweet has stopped having compulsive symptoms. [*Id.*]

Hashim Khidir was diagnosed with PD on November 12, 1996, and was prescribed Mirapex on or about October 26, 1998. [*Id.* at 7.] He received no warning about OCD side effects. [*Id.*] Hashim Khidir began experiencing compulsive side effects "[a]lmost immediately." [*Id.*] He could not control himself while he was on Mirapex. [*Id.*] The drug caused him to lie to his wife, commit adultery, hide the use of funds from his wife, and go gambling for days without notifying his wife. [*Id.*]

Hashim Khidir's wife, Christa Khidir, was forced to "file suit" to avoid being responsible for her husband's Mirapex-induced debts. [*Id.*] After Hashim Khidir stopped taking Mirapex in August 2003, he stopped having compulsive symptoms. [*Id.* at 7–8.]

Around 1999, Joe Neglia was diagnosed with PD and was subsequently prescribed Mirapex. [*Id.* at 8.] He received no warnings about OCD side effects. [*Id.*] After having his dosage increased over a year and a half, Neglia began experiencing compulsive side effects. [*Id.*] Neglia's uncontrollable behavior came in the form of lying to his family,

committing adultery, hiding the use of family funds, and going gambling for days without "any notification." [*Id.*] After Neglia stopped taking Mirapex "and other dopamine agonists," he stopped having compulsive symptoms. [*Id.* at 9.]

All named Plaintiffs claim "emotional [ ]", "mental [ ]" and "psychological [ ]" damages, as well as damages resulting from injury to reputation and financial injury. [*Id.* at 5–9.]

## II. LEGAL STANDARD

Under Rule 23(a), in order to bring a class action, a plaintiff must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable ["numerosity"], (2) there are questions of law or fact common to the class ["commonality"], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"], and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"].

In addition to these prerequisites, a plaintiff must satisfy one of the prongs of Rule 23(b) in order to maintain a class action. Where, as here, a plaintiff moves for class certification under Rule 23(b)(3), the plaintiff must prove that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Where, as Plaintiffs have alternatively done here, a plaintiff moves for class certifi-

cation under Rule 23(b)(2), the plaintiff must prove that:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Additionally, while courts previously considered the competency of class counsel under Rule 23(a)(4), *see, e.g., Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 626 n. 20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), under amendments to the Federal Rules of Civil Procedure in 2003, a separate subpart of Rule 23 now governs courts' consideration of counsel:

> In appointing class counsel, the court must consider:
> - the work counsel has done in identifying or investigating potential claims in the action,
> - counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
> - counsel's knowledge of the applicable law,
> and
> - the resources counsel will commit to representing the class;

F.R.C.P. 23(g)(1)(C)(i). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class ...." F.R.C.P. 23(g)(1)(C)(ii).

There are two primary purposes of class actions: to further judicial economy by avoiding multiple suits and to protect the rights of persons who "might not be able to present claims on an individual basis." *Haley v. Medtronic, Inc.,* 169 F.R.D. 643, 647 (C.D.Cal.1996). The party seeking class certification bears the burden of demonstrating that it has met each of the four requirements of Rule 23(a) and at least one of the Rule 23(b) requirements. *Zinser v. Accufix Research Inst.,* 253 F.3d 1180, 1186 (9th Cir. 2001).

The Court acts as a fiduciary for the absent class members, and "must conduct an independent and rigorous analysis of the moving party's claims to examine whether the requirements of Rule 23 are met." *In re Paxil Litig.,* 212 F.R.D. 539, 543 (C.D.Cal. 2003) (quotations, citation omitted). In addition, to meet its burden the moving party " 'must provide facts to satisfy these requirements; simply repeating the language of the rules ... is insufficient.' " *Id.* (quoting *Bates v. United Parcel Serv.,* 204 F.R.D. 440, 443 (N.D.Cal.2001)) (ellipsis in original).

## III. NATIONWIDE CLASSES OF DRUG TAKERS

### A. Federal Rule of Civil Procedure 23(a)

#### 1. Numerosity

In determining whether under Rule 23(a)(1), joinder of all members is "impracticable," courts have held that the plaintiff need not show that it would be "impossible" to join every class member. *Haley,* 169 F.R.D. at 647. Additionally, there is no specific number cut-off, as the specific facts of each case may be examined. *Ballard v. Equifax Check Servs., Inc.,* 186 F.R.D. 589, 594 (E.D.Cal.1999). Courts have not required evidence of specific class size or identity of class members to satisfy the requirements of Rule 23(a)(4). *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993).

Courts, additionally, have held that "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes–Hernandez v. Smith,* 541 F.Supp. 351, 370 (C.D.Cal. 1982). Courts have held that numerosity is satisfied when there are as few as 39 potential class members. *Patrick v. Marshall,* 460 F.Supp. 23, 26 (N.D.Cal.1978).

Here, Plaintiffs offer a declaration that at least 400 potential plaintiffs have contacted Plaintiff's counsel. [Mot. at 16; Kodam Decl. ¶ 3.] Additionally, Plaintiffs contend that "there are clearly thousands of class members whose interests are at stake." [Mot. at 16.] Defendants here do not directly challenge Plaintiffs' numerosity. The Court thus holds that Plaintiffs have satisfied the numerosity requirement.

### 2. Commonality

Courts have construed Rule 23(a)(2)'s commonality requirement permissively. *Staton v. Boeing Co.,* 313 F.3d 447, 462 (9th Cir. 2002). The Ninth Circuit has explained:

> All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Id.* (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998)).

Additionally, this Court has stated that "the commonality requirement is interpreted to require very little," *Paxil,* 212 F.R.D. at 549, and that "for the commonality requirement to be met, there must only be one single issue common to the proposed class." *Haley,* 169 F.R.D. at 648.

Here, Plaintiffs offer several alleged "common issues of fact and law,": whether Defendants conspired to "withhold critical data regarding [OCD] from the FDA and consumers"; whether this conspiracy was implemented and whether each Defendant was a participant; the operative time period of the unlawful acts alleged; whether Defendants' conduct raised a claim for either strict liability or negligent failure to warn; whether Defendants negligently failed to investigate side effects of Mirapex; whether Plaintiffs suffered injuries from Defendants' "unlawful conduct"; and whether Plaintiffs are entitled to injunctive relief and restitution. [Mot. at 19.]

Defendants argue that resolution of Plaintiffs' questions will turn on different "issues of law or fact." [Defendants' Opposition ("Opp'n") at 13.] Defendants further argue that "[w]here the questions will be answered differently for different class members based on the application of different legal standards and the introduction of uniquely individual evidence, the requirement of commonality is not met." [*Id.*] Defendants cite *In re Dalkon Shield IUD Products Liability Litigation,* 693 F.2d 847 (9th Cir.1982) for the proposition that numerous disparities in the plaintiffs' cases defeat commonality.

In *Dalkon Shield,* the court, in its "Commonality" section, noted that while there were a number of common issues, there were several differences in the plaintiffs' claims relating to negligence, strict products liability, adequacy of warnings at relevant time periods, breach of warranty, fraud, and conspiracy. 693 F.2d at 854. Nevertheless, the court wrote that "[t]he commonality requirement ... is not, of itself, insurmountable, but problems of commonality merge into problems of management." *Id.*

In rejecting certification, the *Dalkon Shield* court wrote in its conclusion that the class did not satisfy the Rule 23(a)(3) requirement of typicality or the Rule 23(b)(3) requirement of superiority, and made no mention of a lack of commonality. *Id.* at 856. Furthermore, the Ninth Circuit, after *Dalkon Shield,* has written that the commonality requirement is satisfied as long as there are core salient facts among the plaintiffs. *See, e.g., Staton,* 313 F.3d at 462.

■ Here, while the Court does find significant differences in what individual Plaintiffs will need to prove, *see* below, the Court finds that Plaintiffs' claims are all related to the same product (Mirapex) and the same general side effect (OCD), [Mot. at 4–9], and that the claims of all Plaintiffs relate to the allegation that Defendants "intentionally and/or negligently failed to warn individuals of these side effects." [FAC ¶ 3.] Thus, the Court holds that Plaintiffs have met the low bar of showing commonality.[10]

### 3. Typicality

To gauge typicality, a "court does not need to find that the claims of the purported class representative are identical to the claims of the other class members." *Haley,* 169 F.R.D. at 649. The Ninth Circuit in *Hanlon* further wrote that "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they

---

**10.** One of the most surprising arguments Plaintiffs make, however, is "class members can be identified through a quick inquiry and analysis of prescription and financial records." They fail to explain how they intend to gain access to such private records, however.

need not be substantially identical." 150 F.3d at 1020. Additionally, the class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the unrepresented class members." *Paxil,* 212 F.R.D. at 549.

Some Courts have maintained a low bar to achieving typicality. *See, e.g., Weinberger v. Jackson,* 102 F.R.D. 839, 844 (N.D.Cal.1984) ("loosely constru[ing]" the typicality requirement in a motion for certification in a securities action). In certification motions for products liability claims, however, courts have enforced a higher bar in determining typicality.

In *Paxil,* for example, the plaintiffs tried to certify a class on behalf of past or current users of a prescription drug used to treat, among other things, depression, panic disorder, OCD, and social anxiety. 212 F.R.D. at 541–42. The plaintiffs alleged that those who took Paxil suffered severe withdrawal reactions. *Id.* at 542.

The *Paxil* court wrote that "individual issues" in the case were "an overarching barrier to class action." *Id.* at 548. Among other individual issues, the court pointed to the fact that the plaintiffs took the drug "at various times, with different dosages, and for different underlying ailments." *Id.* The court also pointed out that "a large number of patients undoubtedly were also taking other drugs along with Paxil . . . ." *Id.*

■ In holding that typicality was not established, the court laid out the differences between commonality and typicality. *Id.* at 550. While commonality may be satisfied by just one unifying factual or legal question, typicality requires " 'that the claims of the class representatives be typical of those of the class' " and is achieved " 'when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.' " *Id.* (quoting *Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir.2001)).

Using those standards for its case, the *Paxil* court noted that "the potential differences among the putative class members would force the class representatives to make difficult—and ultimately, legally impermissi-

ble—choices at trial." 212 F.R.D. at 549. For example, the court wrote, a class representative who took Paxil and no other prescription drugs may be willing at trial to concede that other prescription medication could equally cause severe symptoms. *Id.* at 549–50.

In *In re Baycol Products Litigation,* 218 F.R.D. 197, 206 (D.Minn.2003), a class action certification that involved alleged harm caused by a drug used to reduce lipid levels of persons with high cholesterol, the court similarly found that typicality was absent.

The court pointed out that the case involved many persons "who took different dosages of Baycol, at different times, and possibly took Baycol concomitantly with other prescription drugs." *Id.* at 205. In addition, the court asserted that "unique defenses" might be available to Plaintiffs who took lower doses. *Id. See also Jones v. Allercare, Inc.,* 203 F.R.D. 290, 301 (N.D.Ohio 2001) (ruling typicality lacking in household products liability class certification motion in part because proof of causation depended on individual factors "such as the nature of each plaintiff's exposure and personal susceptibility" and plaintiffs had divergent medical histories and different symptoms); *Gevedon v. Purdue Pharma,* 212 F.R.D. 333, 340 (E.D.Ky.2002) (holding no typicality in case involving drug OxyContin in part because "resolution of this question will require an examination of facts specific to each class member.")

■ Here, Plaintiffs point to the similarities between the three named Plaintiffs. [Mot. at 5–9.] For instance, Jim Sweet, Hashim Khidir, and Joe Neglia all had PD, all took Mirapex, all committed adultery, all lied to their families to go gambling, and all stopped having these symptoms when they stopped taking the drug. [*Id.*]

District courts, however, sometimes need to "probe beyond the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Defendants point to a number of differences between the named Plaintiffs. [Opp'n at 11–13.] Neglia, for instance, took

ten times the dosage of Mirapex that Hashim Khidir took (4.5 mg per day compared to .375 mg per day). [Defendants' Exhibit ("Def.Ex.") C at 48:17–49:4, 73:2–7; Def. Ex. A at 130″19–131:5.] Additionally, Neglia's gambling problems began more than three years after he began taking Mirapex, while Hashim Khidir started to gamble compulsively within a week after beginning the drug. [Def. Ex. C at 48:17–24, 77:24–25–78:1–13; Def. Ex. A at 37:7–12.] The three named Plaintiffs also were taking numerous different prescription medicines at the same time they were taking Mirapex, including some for PD. [Def. Ex. F at Khidir 12, Neglia 24, Sweet 2–7; Ex. A at 34:12–36:7; Ex. C at 60:16–61:2; Ex. D at 206:21–207:9.]

Plaintiffs downplay the differences cited by Defendants [Plaintiffs' Reply ("Reply") at 16–17]. It was just those types of differences in dosages, timing, and other prescription drugs taken by the plaintiffs, however, that have caused other district courts to rule that the typicality requirement was not met in class action certifications involving products liability claims. *Paxil,* 212 F.R.D. at 548; *Baycol,* 218 F.R.D. at 205. In our case, these differences are equally pronounced and could cause conflicts between class members.

For instance, a class representative who was on other medications may take the position that it was Mirapex that caused the side effects, while a plaintiff who is not on other medications might concede that other prescription drugs could cause the symptoms. Additionally beginning in March 2005, Defendants supplemented the labeling for Mirapex with a mention that after the drug received FDA approval, it was discovered to cause "compulsive behaviors (including sexual and pathological gambling) [sic]." [Def. Ex. I.] Because Plaintiffs define their class as individuals who took Mirapex "between July 1, 1997 through present," [Mot. at 2], there could be legal differences between those who took the drug before the labeling change and those who took the drug after the addition.

Finally, the Court finds that it is especially difficult to find typicality with the particular type of side effects involved in this case. Unlike a defective stent or even a physical side effect from a prescription drug, in which causation might not be difficult to prove, here the novel allegations are unusually dependent on external forces. Just as the *Allercare* court found typicality lacking in part because of the nature of each plaintiff's exposure and personal susceptibility, 203 F.R.D. at 301, the Court in this case finds the importance of causation magnified. For instance, some of the Plaintiffs' proximity to gambling outlets, or available leisure time to shop, may contribute to their alleged Mirapex-induced compulsive behavior.

■ In their Reply, Plaintiffs for the first time suggest a way to deal with what they concede to be "individual issues" in the proposed class. [Reply at 4.] Plaintiffs propose a bifurcated trial consisting of two stages. [*Id.*] The first stage would be the "class action" part of the litigation, dealing with "common issues," such as whether and which Defendants conspired to withhold data regarding OCD from the FDA and consumers. [*Id.* at 4–5.] In the second stage, individual class members would go into "a local court"[11] to address questions such as whether individual members met the requirements for the class and what his or her damages were. [*Id.* at 5.]

The Court declines to consider Plaintiffs' trial plan, as "it is improper for a party to raise a new argument in a reply brief." *United States v. Boyce,* 148 F.Supp.2d 1069, 1085 (S.D.Cal.2001). In addition, the observation by Defendants in their Opposition that Plaintiffs had failed to submit a trial plan as part of their Motion, [Opp'n at 20], does not justify Plaintiffs submitting the plan in their Reply. *Eberle v. City of Anaheim,* 901 F.2d 814, 818 (9th Cir.1990).

The Court observes that even if it did consider Plaintiffs' trial plan, typicality would still not be achieved. In *Paxil,* the court considered a similar plan that proposed to separate general issues from specific issues and observed that "[t]he theory and the benefits of bifurcation, when placed in actual practice, will prove to be ephemeral." 212 F.R.D. at 547.

---

**11.** Plaintiffs give no explanation whatsoever of what they are referring to as a "local court."

Thus, the Court finds that Plaintiffs have failed to show typicality, and their simplistic trial plan fails to cure the deficiency.

### 4. Adequacy of Representation

Traditionally, courts have engaged in a two-part analysis to determine if the plaintiffs have met the requirements of Rule 23(a)(4): (1) the class representatives must not have interests antagonistic to the unnamed class members and (2) the representatives must be able to prosecute the action "vigorously through qualified counsel." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978).

Adequate representation " 'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.' " *Paxil*, 212 F.R.D. at 550 (quoting *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir.1994)). Courts now determine the adequacy of counsel under Rule 23(g), which was created in 2003. *See, e.g., Hill v. Merrill Gardens, L.L.C.*, 2005 WL 2465250, *3 (N.D.Ind.2005); F.R.C.P. 23 advisory committee notes.

When courts have determined that typicality is absent because there are too many divergent individual issues among plaintiffs, they will also hold that adequacy of representation is lacking. *See Paxil*, 212 F.R.D. at 550. In *Paxil*, the court wrote that because the case forced the court to focus on the individual plaintiff, "no class representative can possibly represent such individual plaintiffs without encountering a conflict of interest somewhere along the line." *Id.* Thus, "questions of typicality merge[d] into questions regarding adequacy" and the conflicts made "the class representatives and class counsel, despite their apparent best intentions, inadequate under Rule 23(a)(4)." *Id. See also Allercare*, 203 F.R.D. at 302 (holding that adequacy of representation is not met because "typicality is subsumed in the adequacy of representation test.") Thus, because the abundance of individual issues in this case bars a finding of typicality, adequacy of representation is necessarily lacking as well.

There are also concerns here regarding the adequacy of Plaintiffs' counsel to handle a large class action in federal court. Defendants argue that Plaintiffs' counsel's failure to submit a trial plan as part of its Motion "raises serious questions as to their adequacy to serve as class counsel." [Opp'n at 20 n. 7.]

In their Motion, Plaintiffs assert that their counsel has "handled numerous products liability cases over the firm's nine year existence," and that their counsel has been involved with Mirapex cases for more than two years, without specifying the nature or extent of the involvement. [Mot. at 26–27.] These are vague statements. The Motion and accompanying Declaration lack any specific information about counsel's education or experience, such as undergraduate and law school degrees and honors, clerkship experience, cases tried to verdict or argued before appellate courts, articles or treatises authored, etc. In their Reply, Plaintiffs concede that their counsel "does not have direct class action experience." [Reply at 7.]

Not only does Plaintiffs' counsel admittedly lack experience with class actions, but their work to date in this action demonstrates a failure to comply with the federal rules, and, more critically, apply federal legal principles when clearly applicable. For example, Plaintiff's moving papers omitted required information regarding a trial plan. This error was compounded when their Reply improperly attempted to raise the issue for the first time.

The Ninth Circuit has clearly stated that plaintiffs seeking certification of a nationwide class in which numerous state laws may apply bear the burden of demonstrating a trial plan. *Zinser*, 253 F.3d at 1189. In their Motion, Plaintiffs gave absolutely no indication as to the proper application of numerous state laws in an action that includes negligence and other state-based claims.

After Defendants pointed out in their Opposition that Plaintiffs failed to satisfy this key requirement of a motion for class certification, [Opp'n at 20], Plaintiffs' counsel submitted a "trial plan" in their Reply. [Reply at 4–5.] Not only was it inappropriate for Plaintiffs' counsel to submit this new infor-

mation in their Reply, but the plan is insufficient to the point of risibility. For example, Plaintiffs give the Court absolutely no guidance regarding an orderly manner in which to apply all the varying states' laws in the "class action component" of their plan, which includes determinations of negligence and strict liability. [*Id.*]

Plaintiffs' counsel in their Motion continuously cite to California state cases regarding class certification requirements. [*See, e.g.,* Mot. at 16 (citation to *Clothesrigger v. GTE Corp.,* 191 Cal.App.3d 605, 236 Cal.Rptr. 605 (1987)); *id.* at 18 (citation to *Fanucchi v. Coberly–West Co.,* 151 Cal.App.2d 72, 311 P.2d 33 (1957)); *id.* at 26 (citation to *McGhee v. Bank of America,* 60 Cal.App.3d 442, 131 Cal.Rptr. 482 (1976)).]

For instance, to bolster their argument that "[a]n ascertainable class requires only that the right of each individual to recover may not be based on a separate set of facts applicable only to them [sic]," Plaintiffs point to *Vasquez v. Superior Court,* 4 Cal.3d 800, 809, 94 Cal.Rptr. 796, 484 P.2d 964 (1971). In that case, the California Supreme Court used as its authority to rule on class actions Section 382 of the California Code of Civil Procedure. *Id.* at 808, 94 Cal.Rptr. 796, 484 P.2d 964. In federal court, however, the Supreme Court has made clear that Federal Rule of Civil Procedure 23 "govern[s] federal-court class actions." *Amchem Prods.,* 521 U.S. at 613, 117 S.Ct. 2231.

The moving and reply papers are so strewn with errors that at times the argument simply could not be ascertained. As but one example of this, arguing that the Court should grant class certification under Rule 23(b)(2) if it does not grant Rule 23(b)(3) certification, Plaintiffs' counsel writes: "Such a certification would not hardly any individual issues while protecting the interests of the general public." [Mot. at 21.] Plaintiffs' Motion contains few arguments to support its position that certification for purposes of injunctive relief is appropriate, so this sentence is presumably a key one. But the Court could not discern its meaning.

At the hearing, one of Plaintiffs' attorneys told the Court that other, more experienced counsel was waiting to become involved with the case until after the class was certified. This suggestion demonstrated an utter misunderstanding of federal class action litigation.

Finally, Plaintiffs' counsel has violated this Court's standing order regarding the length of motions and replies. In fact, counsel has not even complied with Local Rule 7–5, dictating a separate notice of motion and memorandum of points and authorities.

Courts have considered proposed class counsel to be inadequate when their work up to that point in the case was of poor quality. In *Wrighten v. Metropolitan Hospitals, Inc.,* 726 F.2d 1346, 1352 (9th Cir.1984), the court approved a district court's denial of class certification, a decision that was made in part because the proposed class counsel's "pleadings and interrogatories had an 'assembly line' quality that suggested something less than the forthright and vigorous approach required of counsel in class actions."

In *Kingsepp v. Wesleyan University,* 142 F.R.D. 597, 602–03 (S.D.N.Y.1992), the court considered counsel to be inadequate in part because of the poor quality of memoranda he had filed in the action. The court wrote that his pleadings "obscured the issues" and "quoted large portions of text in the place of argument, analysis, or discussion." *Id.* at 602.

The *Kingsepp* court explained the rationale in closely examining counsel's work: "Because class counsel seeks to determine the rights of absent putative class members, a court must carefully scrutinize the adequacy of representation when considering to certify a class." 142 F.R.D. at 599 (quotations omitted). Class counsel acts as a fiduciary for class members and serves in a "position of public trust." *Id.* (quotations omitted).

For the reasons set forth above, counsel for the named Plaintiffs have not demonstrated their adequacy to serve as class counsel in this case.

## B. Federal Rule of Civil Procedure 23(b)(3)

Plaintiffs have not met two of the Rule 23(a) requirements, and class certification

therefore is necessarily defeated. Although the Court need not consider factors under 23(b)(3), *Gevedon,* 212 F.R.D. at 341, it will briefly explore the Rule 23(b) factors as they further support denial of class certification here.

### 1. Predominance

■ Defendants argue that common questions do not predominate here in part because Plaintiffs do not meet their burden of showing how the court should cope with variations in state law. [Opp'n at 16.] According to Defendants, "[t]hese are real, substantive differences" and apply "to the elements of the causes of action pled, the burdens of proof, admissible evidence, available defenses, and recoverable damages." [*Id.*] Defendants provide a chart showing each state's and the District of Columbia's negligence and failure to warn standard. [Defendants' Appendix B.] Because of these numerous and varying standards, Defendants assert that "[c]hoice of law analyses would swamp this Court" and that the Court would have to apply "51 jurisdictions' substantive law." [Opp'n at 21.]

Indeed, the Ninth Circuit has written that "when more than a few state laws differ, [the] court would be faced with [the] impossible task of instructing [the] jury on relevant law." *Zinser,* 253 F.3d at 1189 (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1085 (6th Cir.1996)).

In *Zinser,* the court considered whether the district court properly decided against certifying a class involving products liability claims. 253 F.3d at 1185–86. On appeal, the class representative plaintiff argued that Colorado law alone should apply to some claims, while Delaware and Colorado law jointly should apply to other claims. *Id.* at 1187. In holding that the plaintiff had failed to meet her burden of showing that Colorado law applied to many of the claims, the court held that she failed to conduct properly California's rigorous choice of law inquiry. *Id.* at 1188.

Here, not only have Plaintiffs failed to conduct an in-depth choice of law analysis showing that the case would be manageable as a class action, but they never even suggest which state laws should apply. Plaintiffs' untimely "trial plan" does nothing to alleviate Defendants' concerns about the application of a large number of different states' laws. [Reply at 4–5.]

Plaintiffs' sole suggestion on coping with choice of law issues comes in one brief, bald assertion in their Reply: "The laws and regulations for these common questions arise under common law which are pretty uniform across state boundaries." [*Id.* at 15.] According to the Ninth Circuit, this mere assurance by a plaintiff is inadequate: A "court cannot rely merely on assurances of counsel that any problems with predominance or superiority can be overcome." *Zinser,* 253 F.3d at 1189 (citing *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 742 (5th Cir.1996)). *See also In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,* 174 F.R.D. 332, 349 (D.N.J.1997) ("In a motion for class certification, plaintiffs bear the burden of providing an extensive analysis of state law variations to determine whether there are insuperable obstacles to class certification.") (quotations omitted). Here, this one statement cannot combat Defendant's assertion and evidence that the application of 51 different standards for each claim make this case inappropriate for class certification. [Opp'n at 21; Defendants' Appendix B.] Accordingly, Plaintiffs have not shown that common questions predominate.

### 2. Superiority

■ Because there are too many individual questions at issue in this case and because Plaintiffs have not met their burden of showing that this case is judicially manageable as a class action, as discussed above, a class action here is not superior to other methods of litigation.

Furthermore, the Court notes that, while the Ninth Circuit has declined to create a per se bar on class certifications in products liability litigation, *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1233 (9th Cir.1996), the court has "recognized the potential difficulties of commonality and management inherent in certifying products liability class actions." *Zinser,* 253 F.3d at 1186 (quotations

omitted). *See also Baycol,* 218 F.R.D. at 203–04 (giving list of cases in which federal courts have denied class certification in products liability cases involving prescription drugs and asserting that "[t]o date, no Court of Appeals decision has approved class certification of an action involving prescription drugs.")

The two cases Plaintiffs point to in their Reply as demonstrating that "numerous courts have certified national personal injury class actions," [Reply at 9], are distinguishable from this case. *In re School Asbestos Litigation,* 789 F.2d 996, 1000 (1986) did not involve "personal injury," but rather property damage. Contrary to our case, the court wrote that proximate cause "could be resolved on a class-wide basis without involving individualized member-by-member proof." *Id. See Valentino,* 97 F.3d at 1232 (distinguishing *School Asbestos* because plaintiffs "were seeking compensation for property damages, not for personal injuries.")

The other case to which Plaintiffs point, *In re Copley Pharmaceutical, Inc.,* 161 F.R.D. 456, 466 (D.Wyo.1995), is distinguishable from our case because the amounts at issue for each plaintiff in that case were not large. The court wrote that "the most convincing reason" for certification was that an attorney representing six clients approached the court from the back of the courtroom during oral argument and asserted that he had six clients, "none of whom had large claims against Copley" and the claims would be lost without the class action. *Id.*

Indeed the Supreme Court has written:

[w]hile the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.

*Amchem,* 521 U.S. at 617, 117 S.Ct. 2231. Here, because Plaintiffs' claims allegedly range from at least $250,000 to $1.2 million, [Mot. at 5–9], they do not present the same concerns that they will be lost absent class certification. Accordingly, a class action here is not superior to other methods of litigation.

### 3. Factors to be considered by the court

Under Rule 23(b)(3)(A)-(D), courts first consider the interest of the individual members in controlling the prosecution of separate actions. That factor weighs against class certification here because Plaintiffs have alleged large damage amounts. [Mot. at 5–9.]

Additionally, the class members appear to have large stakes in the litigation, as the alleged harm has affected such aspects of their lives as their marriages and finances. [*Id.*] *See Haley,* 169 F.R.D. at 652 ("This factor is most relevant where each class member has suffered sizeable damages or has an emotional stake in the litigation.")

Courts next consider the extent of any litigation concerning the controversy that has already begun. Here, neither party addresses whether there are other pending lawsuits concerning OCD side effects from Mirapex. Because Plaintiffs bear the burden of proving that it has met one of the Rule 23(b) requirements *Zinser,* 253 F.3d at 1186, the Court rules that this factor weighs against class certification.

The next factor is the desirability or undesirability of concentrating the litigation of the claims in the particular forum. In situations where potential plaintiffs, witnesses, and evidence are scattered throughout the country, courts have interpreted this factor as requiring some kind of rationale as to why it would be efficient for that particular court to hear "such a massive class action lawsuit." *Haley,* 169 F.R.D. at 653. In *Haley,* the court further wrote that "plaintiffs have not even established that the vast majority of the individual lawsuits that have been filed—or that will be filed—should be brought in the Central District of California." *Id.* Here as well, Plaintiffs have provided the Court no cogent reason why this action should be heard by this court. Accordingly, this factor weighs against class certification.

Finally, courts look at the difficulties likely to be encountered in the management

of a class action. As discussed above, Plaintiffs have completely failed to address potential difficulties with the possible application of numerous state laws. Thus, this factor weighs heavily against certification.

## C. Federal Rule of Civil Procedure 23(b)(2)

Plaintiffs propose that if the Court does not certify a class under Rule 23(b)(3), then the Court "should certify a class for purposes of injunctive relief against the Defendants to prevent further sales of Mirapex until proper warnings are given to consumers and physicians regarding the dangers of [OCD]." [Mot. at 21.] Defendants argue that this proposed Rule 23(b)(2) class is "impliedly preempted" because it is the FDA's role, not that of private litigants, to police compliance with FDA regulations. [Opp'n at 22–23.]

The Court need not decide whether this proposed injunction is preempted because Plaintiffs' proposed class fails to meet Rules 23(a)(3) and 23(a)(4). Unless all of the Rule 23(a) requirements are satisfied, a class cannot be certified.

Additionally, courts have held that even though Rule 23(b)(2), unlike Rule 23(b)(3), does not specifically contain predominance and superiority requirements, a class under Rule 23(b)(2) must not be overrun with individual issues. *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142–43 (3d Cir.1998) ("While 23(b)(2) class actions have no predominance or superiority requirements, it is well established that the class claims must be cohesive.") The *Paxil* court further wrote that "the problems that are fatal to Rule 23(b)(3) certification are likewise fatal to Rule 23(b)(2) certification." 212 F.R.D. at 552. Here, because the predominance of individual issues barred certification under Rule 23(b)(3), certification under Rule 23(b)(2) is similarly barred.

## IV. NATIONWIDE SUBCLASS OF SPOUSES OF DRUG TAKERS

Plaintiffs propose a subclass of loss of consortium for spouses of those who suffered OCD side effects from Mirapex. [Mot. at 2.] Defendants argue that because Plaintiffs' personal injury claims cannot be certified, the loss of consortium claim must fall in turn. [Opp'n at 13 n. 3.]

■ Indeed, in *Blaz v. Galen Hospital Illinois, Inc.*, 168 F.R.D. 621, 623, 625 (N.D.Ill.1996), an action for medical malpractice involving X-ray therapy, the court found that typicality was lacking "due to the potentially wide variations in individual treatments, circumstances, and effects." The court also held that loss of consortium claims both by the plaintiff who had suffered the alleged injuries and by a spouse of a person who had suffered alleged injuries could not be certified. *Id.* at 626. The court wrote that if the injuries alleged by the class representative "are not typical of those of the class, a claim such as loss of consortium, which is based on those injuries, cannot be typical of the class." *Id.*

This reasoning applies with equal force to our case. There is no typicality among the Plaintiffs in the main class proposed here, so it necessarily follows that there cannot be typicality for the loss of consortium claim.

## V. CALIFORNIA SUBCLASS

Finally, Plaintiffs ask for certification of a California subclass of persons who took Mirapex and suffered from OCD and their spouses. [Mot. at 2–3.] Plaintiffs allege that Defendants violated California Business and Professions Code sections 17200 and 17500. [*Id.* at 3.] Defendants argue that Plaintiffs' certification request for this subclass is barred because California law does not permit money damages for violations of Business and Professions Code Sections 17200 or 17500. [Opp'n at 24.] And, Defendants argue again, because private litigants are impliedly preempted from regulating prescription drugs, Plaintiffs cannot seek injunctive relief for this subclass. [*Id.*] In their Reply, Plaintiffs say they are seeking only injunctive relief, and not money damages, for this subclass. [Reply at 18.]

The Court need not decide whether federal law has preemptively barred Plaintiffs from obtaining injunctive relief against Defendants through a California subclass. For many of the same reasons that certification failed for the nationwide class, it also fails for a Cali-

fornia-exclusive class. While the concerns over the application of multiple state laws would not apply to a subclass of California-only plaintiffs, the same concerns about the predominance of individual causation issues for the proposed nationwide class also apply to this proposed subclass. Accordingly, the Court will not certify a California subclass.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification is DENIED for all of the proposed classes.